UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL CHRISTIAN,

        Plaintiff,

v.

QUALITY BUSINESS MANAGEMENT
SOLUTIONS, INC., Q.B. FINANCIAL, INC.,
B.B.M. INVESTMENTS LLC,
GLOBAL PAY PROCESSING, LLC,
SQUARE ONE CREDIT SERVICES INC,
MINDY ANN FINCHER and
RENE JAVIER IRAETA PALACIOS,

        Defendants.

_____/

## COMPLAINT

**I.    Introduction**

1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy

Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection

Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC")

M.C.L. § 339.901 *et seq*.

2.    Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay loans.  This scheme, and similar ones operated by hundreds of

1

entities located in and around Los Angeles, California, Jacksonville, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill and Fort Mill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with prosecution, litigation, derogatory credit reporting, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime. Often times the debt is time-barred. Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect the account. Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.     The use of these unlawful debt collection practices is epidemic. See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants. See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a loan collection scheme that is indistinguishable

2

from the ongoing scheme being perpetrated by the defendants as alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe. See www.ftc.gov/news-events/press-releases/2015.

5.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this

complaint.

## II.     Jurisdiction

6.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §

2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding

plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper

because the pertinent events took place here.

## III.    Parties

7.      Plaintiff Michael Christian is an adult, natural person residing in Kent County,

Michigan.  Mr. Christian is a "consumer" and "person" as the terms are defined and used in the

FDCPA.  Mr. Christian is a "consumer," "debtor" and "person" as the terms are defined and used

in the MRCPA and MOC.

8.      Defendant Quality Business Management Solutions, Inc. ("QBMS") is an active

California corporation, formed on or about February 17, 2017. QBMS claims to be doing business

at 337 North Vineyard Avenue, Suite 400, Ontario, California 91764. The registered agent for

QBMS is Corporation Service Company, doing business in California as CSC-Lawyers

Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

The CEO and one of the Directors of QBMS is defendant Mindy Ann Fincher. The CFO and one

of the Directors of QBMS is defendant Rene Javier Iraeta Palacios. QBMS uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

QBMS regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another. QBMS is a "debt collector" as the term is defined and used in

the FDCPA. QBMS is a "regulated person" as the term is defined and used in MRCPA.

Alternatively, QBMS is a "collection agency" and "licensee" as the terms are defined and used in

4

MOC.

9.      QBMS claims to be a member of multiple debtor trade groups, including ACA International, Receivables Management Association International (formerly DBA International), and California Association of Collectors, Inc.

10.     Defendants maintain an internet domain (www.qbms.us) that was registered on February 17, 2017, through Godaddy.com, LLC. The registrant contact person is defendant Mindy Ann Fincher. The registrant's email address is riraeta.biz@gmail.com and contact telephone number is 909-418-7786, both which are registered to defendant Rene Javier Iraeta Palacios. The registrant's street address is 12598 Central Avenue, Suite 222, Chino, California 91710. The domain name links to an internet website that states in part: "At QBMS we focus on assisting our clients with their Debt needs from: Buying, Selling to Placing debt. . . .  We Provide the best National Data source: We have data from but not limited to: NFS, Payday Loans, Retail, DDA, Credit Cards, Promissory Notes, Amount others.  We Buy Debt portfolios: If you own a company and have delinquent account receivables we can help you turn those accounts in to money.  We Place Debt Portfolios: If you have delinquent account receivables we can create a forward cash flow, by placing your debt with collection agencies. TURN BAD DEBT IN TO MONEY!" The QBMS internet website provides a business address of 337 North Vineyard Avenue, Suite 400, Ontario, California 91764 and a contact telephone number of 888-625-9431.

11.     QBMS and defendant Mindy Ann Fincher have ran advertisements offering to sell portfolios of personal, financial information regarding consumers on the internet website, www.debtconnection.com. The advertisements listed contact telephone numbers of 888-625-9431 and 310-388-0326 (fax), and an email address of info@qbms.us.

12.     QBMS directly and indirectly participated in the unlawful debt collection

practices to collect an alleged debt from Mr. Christian that are described in this complaint.

13.     Defendant Q.B. Financial, Inc. ("QBF") is an active California corporation, formed on or about April 8, 2013. QBF claims to be doing business at 337 North Vineyard Avenue, Suite 400, Ontario, California 91764. According to a report filed May 16, 2018 by QBF with the State of California, the CEO, CFO, President, Secretary, Director and Registered Agent for QBF is defendant Mindy Ann Fincher, 337 North Vineyard Avenue, Suite 400, Ontario, California 91764. QBF uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. QBF regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. QBF is a "debt collector" as the term is defined and used in the FDCPA. QBF is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, QBF is a "collection agency" and "licensee" as the terms are defined and used in MOC.

14.     Defendants have maintained a QBF related internet domain (www.qbfi2support.us) that was registered on October 14, 2016, through Godaddy.com, LLC. The domain name was registered by Rene Javier Iraeta Palacios, with the following contact information: email address – riraeta.biz@gmail.com; telephone number – 909-418-7786; and street address – 12598 Central Avenue, Suite 222 (or 202), Chino, California 91710. Defendants have used the domain name to send and receive emails. For example, on June 23, 2017, defendants used kjm@qbfi2support.us as a contact email address when they registered another domain name, www.capitalmangement.biz with an address of  337 North Vineyard Avenue, Suite 400, Ontario, California 91764.

15.     QBF directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Christian that are described in this complaint.

16.     Defendant B.B.M. Investments LLC ("BBM") is an active California limited

liability company, formed on or about September 1, 2015. BBM claims to be doing business at 337 North Vineyard Avenue, Suite 400, Ontario, California 91764. BBM also has claimed to be doing business at 12598 Central Avenue, Suite 202, Chino, California 91710. According to a report filed May 16, 2018 by BBM with the State of California, the CEO, Member, Manager and Registered Agent for BBM is defendant Mindy Ann Fincher, 337 North Vineyard Avenue, Suite 400, Ontario, California 91764. BBM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. BBM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. BBM is a "debt collector" as the term is defined and used in the FDCPA. BBM is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, BBM is a "collection agency" and "licensee" as the terms are defined and used in MOC.

17.     BBM directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Christian that are described in this complaint.

18.     Defendants have done business through BBM under multiple unregistered names, including "BBM LLC," "BBM Payments," "Bloomberg, Bogony and Myers," and "BB McKinze."

19.     Defendants maintained an internet domain (www.bloombergbogonyandmyers.com) that was registered anonymously by defendants on November 9, 2017, through Godaddy.com, LLC. When active, the domain name linked to an internet website that implied that Bloomberg, Bogony and Myers is a law firm, replete with a logo that includes the scales of justice, and includes quotes such as "All people are equal before the law. A good attorney is what makes a difference." The internet website included a list of phony "clients." The internet website stated: "Our experienced staff is willing and able to assist consumers in creating a workable, successful

solution to getting their financial status back on track." The internet website included a contact email address of administration@bloombergbogonyandmyers.com and telephone number of 866-723-1464.

20.    Defendants also maintain an internet domain (www.litigationprocess.solutions) that was registered on April 19, 2017, through Godaddy.com, LLC. The registrant contact person was defendant Rene Javier Iraeta Palacios. The registrant's email address was riraeta.biz@gmail.com which was registered to defendant Rene Javier Iraeta Palacios. The registrant's telephone number was 919-498-0245. The registrant's street address was 337 North Vineyard Avenue, Suite 400, Ontario, California 91764. Defendants used the related email address of administration@litigationprocess.solutions to send and receive emails in furtherance of their unlawful debt collection scam.

21.    Defendant Global Pay Processing, LLC ("GPP") is an active California limited liability company, formed on or about December 3, 2013. GPP claims to be doing business at 337 North Vineyard Avenue, Suite 400, Ontario, California 91764. According to a report filed September 27, 2017 by GPP with the State of California, the CEO, Member and Manager for GPP is defendant Mindy Ann Fincher, 337 North Vineyard Avenue, Suite 400, Ontario, California 91764. The registered agent for GPP is Corporation Service Company, doing business in California as CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833. GPP uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. GPP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. GPP is a "debt collector" as the term is defined and used in the FDCPA. GPP is a "regulated person" as the term

is defined and used in MRCPA.  Alternatively, GPP is a "collection agency" and "licensee" as the

terms are defined and used in MOC.

22.     GPP directly and indirectly participated in the unlawful debt collection practices

to collect an alleged debt from Mr. Christian that are described in this complaint.

23.     Defendant Square One Credit Services Inc ("SOCS") is an active California

corporation, formed on or about December 5, 2016. SOCS claims to be doing business at 337

North Vineyard Avenue, Suite 400, Ontario, California 91764. According to a report filed May 16,

2018 by SOCS with the State of California, the CEO, CFO, Secretary, Director and Registered

Agent for SOCS is defendant Rene Javier Iraeta Palacios, 337 North Vineyard Avenue, Suite 400,

Ontario, California 91764. SOCS uses interstate commerce and the mails in a business the principal

purpose of which is the collection of debts. SOCS regularly collects or attempts to collect, directly

or indirectly, debts owed or due or asserted to be owed or due another. SOCS is a "debt collector"

as the term is defined and used in the FDCPA. SOCS is a "regulated person" as the term is defined

and used in MRCPA.  Alternatively, SOCS is a "collection agency" and "licensee" as the terms are

defined and used in MOC.

24.     SOCS directly and indirectly participated in the unlawful debt collection practices

to collect an alleged debt from Mr. Christian that are described in this complaint.

25.     Defendant Mindy Ann Fincher, also known as Mindy A. McKellar, is a natural

person, age 37, purportedly residing at either 7013 Freesia Court, Corona, California 92880-8921

or 7080 Blackbird Lane, Corona, California 92880-9060. Ms. Fincher is an owner, officer,

member, manager, employee and agent of defendants QBMS, QBF, BBM, GPP and SOCS. Ms.

Fincher uses interstate commerce and the mails in a business the principal purpose of which is the

collection of debts. Ms. Fincher regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Fincher is a "debt collector" as the term is defined and used in the FDCPA. Ms. Fincher is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Fincher is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

26.    Ms. Fincher (a) created the collection policies and procedures used by defendants QBMS, QBF, BBM, GPP and SOCS, and their employees and agents, in connection with their joint and common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of QBMS, QBF, BBM, GPP and SOCS, (c) oversaw the application of the collection policies and procedures used by QBMS, QBF, BBM, GPP and SOCS, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by QBMS, QBF, BBM, GPP and SOCS, and their employees and agents to collect debts from consumers, including the tactics and scripts that were used in their joint and common efforts to collect an alleged debt from Mr. Christian as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by QBMS, QBF, BBM, GPP and SOCS, and their employees and agents in connection with their joint and common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by QBMS, QBF, BBM, GPP and SOCS, and their employees and agents in connection with their joint and common efforts to collect an alleged debt from Mr. Christian as stated in this complaint.

27.    Ms. Fincher directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Christian that are described in this complaint.

28.     Ms. Fincher is an incorrigible con artist. Ms. Fincher previously operated her debt collection scheme under the umbrella of two now defunct California limited liability companies, The McKellar Group, LLC and McKellar & Associates Group, Inc.

29.     Ms. Fincher also was the CEO of Student Loan Assistance Center, LLC ("SLAC"), a California limited liability company formed on or about October 8, 2014, which was investigated by the Federal Trade Commission and subsequently sued by the State of Washington for marketing and operating a service to advise and assist student loan borrowers, in violation of multiple consumer protection statutes. SLAC entered into a consent judgment to repay hundreds of thousands of dollars to consumers and went out of business.

30.     Ms. Fincher is the CEO, CFO, Secretary and Director of non-party B&B Trucking Solutions, an active California corporation, formed July 24, 2017, and purportedly doing business out of a Private Mailbox No. 431, rented from The UPS Store No. 5465, 7056 Archibald Avenue, Suite 102, Eastvale, California 92880. It will need to be determined in discovery whether or not this entity participated in the unlawful debt collection practices to collect an alleged debt from Mr. Christian that are described in this complaint.

31.     Ms. Fincher is the Registered Agent for non-party ARV Services Inc ("ARV"), an active California corporation, formed July 24, 2017, and purportedly doing business at 27885 Canyon Hills Way, Murrieta, California 92563, which appears to be the residence of non-party Amanda Rose Vining, a registered dental assistant. According to a report filed July 9, 2016 by ARV with the State of California, Ms. Vining is the CEO, CFO, Secretary and Director for ARV, which is described disclosed in the report as being in the business of "Payment Processing." It will need to be determined in discovery whether or not ARV or Ms. Vining participated in the unlawful

debt collection practices described in this complaint.

32.     Defendant Rene Javier Iraeta Palacios is a natural person, age 34, purportedly residing at 320 Cody Road, San Dimas, California 91773-1803. Ms. Palacios is an owner, officer, member, manager, employee and agent of defendants QBMS, QBF, BBM, GPP and SOCS. Ms. Palacios uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Palacios regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Palacios is a "debt collector" as the term is defined and used in the FDCPA. Ms. Palacios is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Ms. Palacios is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

33.     Ms. Palacios (a) created the collection policies and procedures used by defendants QBMS, QBF, BBM, GPP and SOCS, and their employees and agents, in connection with their joint and common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of QBMS, QBF, BBM, GPP and SOCS, (c) oversaw the application of the collection policies and procedures used by QBMS, QBF, BBM, GPP and SOCS, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by QBMS, QBF, BBM, GPP and SOCS, and their employees and agents to collect debts from consumers, including the tactics and scripts that were used in their joint and common efforts to collect an alleged debt from Mr. Christian as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by QBMS, QBF, BBM, GPP and SOCS, and their employees and agents in connection with their joint and common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by QBMS, QBF, BBM, GPP and SOCS, and their employees and agents in

12

connection with their joint and common efforts to collect an alleged debt from Mr. Christian as stated in this complaint.

34. Ms. Palacios directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Christian that are described in this complaint.

35. Defendants use multiple, unregistered assumed names when operating their unlawful debt collection scam, including: "QB Payments," "Springfield & Associates," "Mediation Department," and "Mid Services."

36. Defendants sometimes represent to consumers that defendants are doing business at 1370 Valley Vista Drive, Suite 200, Diamond Bar, California 91765, but that address is merely a virtual office rented by defendants from Regus PLC.

37. Defendants use multiple telephone numbers when operating their unlawful debt collection scam, including: 855-517-3388, 866-224-0306 (fax), and 888-738-5966.

38. Defendants use multiple email addresses when operating their unlawful debt collection scam, including: recoverydept.info@gmail.com.

39. All defendants (and other entities to be identified in discovery and named as additional defendants in this lawsuit) are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

40. An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v.*

13

*National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman &*
*Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d
1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th
Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL
1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

41.     A shareholder, owner, officer, member, manager, employee or agent of a
corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate
veil, by being directly involved in the day-to-day operation of the company, including the training
and managing of employees, reviewing or supervising the review of accounts, materially
participating in the activities of the company, supervising collection activities, overseeing
compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that
each such individual is himself a "debt collector" within the statutory definition, namely, each is a
"person" in a business, "the principal purpose of which is the collection of any debts, or who
regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be
owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P.*
*Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions,*
*LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.     Facts**

42.     On or about April 30, 2013, Mr. Christian opened an account (No 4835026284)
with non-party First Guaranty Bank, a Division of First Citizens Bank and incurred an alleged debt.
Mr. Christian incurred the debt for personal, family and household purposes.

43.      Mr. Christian allegedly failed to repay the debt.

14

44.     In 2014, First Guaranty Bank charged off and then sold the account and related alleged debt to non-party Diverse Funding Associates LLC, a Delaware limited liability company.

45.     According to First Guaranty Bank, when it charged off and sold the account to Diverse Funding Associates LLC, the account had an unpaid balance of $482.82.

46.     On or about March 15, 2018, Diverse Funding Associates LLC sold the account and related alleged debt to non-party Bayview Solutions LLC, a Florida limited liability company.

47.     According to Diverse Funding Associates LLC, when it charged off and sold the account to Bayview Solutions LLC, the account had an unpaid balance of $482.82.

48.     On or about May 2, 2018, Bayview Solutions LLC sold the account and related alleged debt to defendant Q.B. Financial, Inc., with a contact telephone number of 888-738-5966.

49.     When Bayview Solutions LLC sold the account to QBF, the account had an alleged unpaid balance of $482.82.

50.     On or about May 14, 2018, defendants' employee and agent made a call to Mr. Christian's cellular telephone, and left the following scripted message on Mr. Christian's voice mail: "Hi, this is an urgent message intended for Michael Christian. My name is Amy Brooks. I'm contacting you in regards to a complaint that has been forwarded to my office for consideration of legal options. If you wish to discuss the pending actions against you, you must contact the firm directly handling the complaint at office number 855-517-3388 and reference file 183620. Please be advised that this matter has been marked time-sensitive and does require your immediate attention. Failure to respond may result with them proceeding without your participation and consent. Thank you."

51.     On or about May 14, 2018, defendants' employee and agent made a call to Mr.

15

Christian's adult sister's cellular telephone and left the following scripted message on Mr.

Christian's sister's voice mail: "Hi, this is an urgent message intended for Michael Christian. My

name is Amy Brooks. I'm contacting you in regards to a complaint that has been forwarded to my

office for consideration of legal options. If you wish to discuss the pending actions against you,

you must contact the firm directly handling the complaint at office number 855-517-3388 and

reference file 183620. Please be advised that this matter has been marked time-sensitive and does

require your immediate attention. Failure to respond may result with them proceeding without

your participation and consent. Thank you."

52.     On or about May 15, 2018, Mr. Christian made a return call to defendants at

telephone number 855-517-3388 and spoke with defendants' employee and agent who identified

herself as Josephine Adams. In the ensuing conversation, defendants' employee and agent made the

following representations to Mr. Christian:

a)     "I've got a complaint filed against a Michael Christian, File No. 183620. Is
that who I'm speaking with?"

b)     "This case left my office two weeks ago. It's been sent out for service.
okay. For security reasons, would you verify your date of birth and the last
four of your social?"

c)     "I'm going to place you on a brief hold while I locate the case hard copy in
the counsel's office. Just bear with me for a few minutes. I'll be back on the
line to go over the case with you, alright?"

d)     "Okay. I was able to locate the file. So at this time, I'll be going over the
case with you. Just hold off on any questions or concerns until I finish

16

providing all the case details. Once I finish reviewing the file, I'll give you the opportunity to address any questions or concerns that you may have, alright?"

e)   "You are being named as a defendant in a civil lawsuit. You are currently being pursued in the amount of $1,082.82, this is in reference to a breach of contact with Guarantee Bank with Fresh Start account ending in 6284. It looks like the account was initially established on April 30, 2013. You were first reported as being delinquent on September 16, 2013. The account was sent to collections due to nonpayment on January 3, 2014. So it does appear that several failed attempts were made to recover the outstanding funds with three major collection agencies and now this is in litigation. Our firm conducted an asset and liability investigation to verify you had the tangible assets to recover the funds. Do you know what that means?"

f)   "The account number 4835026284."

g)   "We sent you out a letter of compromise forty-eight days ago giving you and your attorney thirty days to respond. You had a settlement offer in the amount of $604.58. When you didn't respond, they started to move forward with the litigation process."

h)   "The name of our company is Springfield & Associates, sir. These letters we sent out were in a white envelope with red writing. They would've read Springfield & Associates. Does that not – is this the first that you are hearing of this?"

      i)      "Have you signed for your summons to appear in court?"

      j)      "If you have not yet signed for your summons, are you able to hold for a couple minutes? I have to call and verify that, but if there's no signature, I can ask counsel to reinstate your settlement offer, if you would like I'll look into that for you. I have to place you on hold. So just bear with me for a few minutes."

      k)      "I was able to verify that you have not yet signed for your summons. I reasonably pushed counsel and asked them if they would be willing to work with you and reinstate your settlement offer but they asked when will those funds be remitted to the firm, and we didn't discuss that. So I didn't know what to present as a means to taking care of this."

      l)      "They are willing to reinstate your settlement offer but they're asking how soon that you'd be able to take care of the matter. We didn't discuss that, so I didn't know what to present."

      m)      "My name is Josephine Adams. My extension is 135."

53.     On or about May 15, 2018, Mr. Christian made another call to defendants at telephone number 855-517-3388 and spoke with defendants' employee and agent who identified herself as "Josephine Adams" with "Springfield & Associates." Mr. Christian contacted defendants this second time for the purpose of identifying the entities that had contacted Mr. Christian and his sister, pretended to be lawyers, and falsely threatened Mr. Christian with litigation and other adverse actions unless Mr. Christian paid money to defendants, Mr. Christian made a payment to defendants in the amount of $100.00 using a debit card drawn on an account with JPMorgan

Chase Bank. According to JPMorgan Chase Bank, the payment was processed that same day by defendants as: "POS DEBIT QB PAYMENTS 888-738-5966 CA."

54.     On May 15, 2018, defendants sent an email to Mr. Christian with attached documents, including a letter written on the letterhead of "Springfield & Associates," falsely stating that Mr. Christian owed a balance of $1,082.82 in connection with the Guaranty Bank account (No. 4835026284), and falsely threatening: "The account has been placed with this office for legal action should this debt remain unpaid." A copy of the email and related documents are attached as Exhibit A.

55.     The above-described threats and representations made by defendants and their employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to extort the payment of money from thousands of consumers across the country through the use of false threats of litigation, intimidation, and unlawful harassment, often times in connection with accounts that are paid, time-barred, stolen or counterfeit, and through the use of unlawfully obtained account and personal information.

56.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

57.     Defendants and their employees and agents wrongfully communicated with Mr. Christian using multiple unregistered aliases.

58.     Defendants and their employees and agents falsely represented and falsely implied that defendants are lawyers.

59.     Defendants and their employees and agents falsely represented and falsely implied

that lawyers were involved in the efforts to collect the alleged debt.

60.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

61.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Christian to collect the alleged debt.

62.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Christian to collect the alleged debt.

63.     Defendants and their employees and agents wrongfully acquired Mr. Christian's personal and financial information.

64.     Defendants and their employees and agents wrongfully used Mr. Christian's personal and financial information.

65.     Defendants and their employees and agents falsely represented and falsely implied that attorneys fees would be added to the balance of the alleged debt.

66.     Defendants did not intend to file a lawsuit against Mr. Christian in any Michigan court in efforts to collect the alleged debt.

67.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

68.     Defendants and their employees and agents falsely represented the amount of the alleged debt.

69.     Defendants and their employees and agents failed to disclose to Mr. Christian the name of the entity that supposedly, currently owns the account.

70.     Defendants and their employees and agents falsely represented and falsely implied

that "this is litigation."

71.     Defendants and their employees and agents falsely represented and falsely implied that a summons had been issued by a court for Mr. Christian to appear in court.

72.     Defendants and their employees and agents falsely represented and falsely implied that defendants had taken efforts to serve Mr. Christian with a summons to appear in court.

73.     Defendants and their employees and agents falsely represented and falsely implied that "our firm conducted an asset and liability investigation to verify you had the tangible assets to recover the funds."

74.     Defendants and their employees and agents falsely represented and falsely implied on May 15, 2018 that "We sent you out a letter of compromise forty-eight days ago giving you and your attorney thirty days to respond," when in fact, defendants did not purchase the account until May 2, 2018, a span of only thirteen days.

75.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

76.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

77.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

78.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

79.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

80.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

81.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

82.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

83.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

84.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector. 15 U.S.C. § 1692e(11).

85.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

86.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

22

87.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

88.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f(1).

89.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (5), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

90.     The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

91.     Defendants and their employees and agents failed to timely send to Mr. Christian a notice containing the information required by 15 U.S.C. § 1692g(a).

92.     A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

93.     The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

94.     A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt.  15 U.S.C. § 1692b(2).

95.     Defendants wrongfully communicated to Mr. Christian's sister that Mr. Christian was supposedly being sued.

96.     Defendants wrongfully communicated to Mr. Christian's sister more information than is allowed by the FDCPA.

97.     Defendants in the described message left on Mr. Christian's sister's cellular telephone voice mail violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b).

98.     Each defendant and each defendant's employees, managers, members, officers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

99.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

100.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

101.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

102.     In connection with efforts to collect an alleged debt from Mr. Christian, defendants (or the entities from whom they received the alleged account) obtained personal information

24

regarding Mr. Christian from a subscription-based internet database (www.accurint.com) ("Accurint") operated and maintained by LexisNexis Risk Management, Inc.

103.    Alternatively, in connection with efforts to collect an alleged debt from Mr. Christian, defendants (or the entities from whom they received the alleged account) obtained personal information regarding Mr. Christian from a subscription-based internet database (www.tlo.com) ("TLO") operated and maintained by TransUnion Risk and Alternative Data Solutions, Inc.

104.    The Accurint database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through Accurint. Subscribers to Accurint must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to Accurint, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

105.    The TLO database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through TLO. Subscribers to TLO must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to TLO, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

106.    The DPPA was enacted in response to growing concerns over the ease with which

stalkers and other criminals could obtain personal information from state departments of motor

vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

107.    The DPPA states:

(a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

(b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

108.    The DPPA also states:

"personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

109.    The DPPA also states:

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

110.    The DPPA enumerates the only "permissible uses" for which personal information

may be obtained.   18 U.S.C. § 2721(b).

111.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or

use personal information regarding Mr. Christian.

112.    Defendants used Accurint or TLO to obtain, disclose and use personal information

regarding Mr. Christian.

26

113.    Defendants made a false representation to Accurint or TLO to obtain personal information regarding Mr. Christian that was derived from Mr. Christian's motor vehicle record.

114.    Alternatively, the entity that obtained Mr. Christian's personal information from Accurint or TLO and disclosed the personal information to defendants, made a false representation to Accurint or TLO to obtain personal information regarding Mr. Christian that was derived from Mr. Christian's motor vehicle record.

115.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

116.    Defendants knowingly obtained, disclosed and used Mr. Christian's personal information, from a motor vehicle record, for the purpose of engaging in their scam to extort the payment of money from Mr. Christian through numerous false threats, including false threats of litigation and sometimes false threats of criminal prosecution.

117.    Defendants knowingly obtained, disclosed and used Mr. Christian's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

118.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Christian's personal information obtained from Accurint or TLO.

119.    No defendant had Mr. Christian's consent, permission, authorization or waiver to obtain Mr. Christian's personal information from Accurint or TLO.

120.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

121.    The DPPA imposes vicarious liability on principals for the acts of the actions of

their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

122.    Defendants, and their employees and agents, each have intentionally and wilfully violated the DPPA.

123.    Each defendant knew, or should have known, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

124.    Each defendant shared Mr. Christian's personal and private financial information among the other defendants, knowing that the other defendants would engage in the unlawful debt collection practices that are described in this complaint.

125.    Each defendant owed a duty of care to Mr. Christian, not to obtain and not to share Mr. Christian's personal and private financial information with entities that each defendant knew or should have known had no right to possess the information and that each defendant knew or should have known would use that information to attempt to unlawfully coerce the payment of money from Mr. Christian. Each defendant breached the duty of care owed to Mr. Christian.

126.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

127.    Plaintiff incorporates the foregoing paragraphs by reference.

128.   Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)   Defendants violated 15 U.S.C. § 1692b;

b)   Defendants violated 15 U.S.C. § 1692c;

c)   Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

d)   Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

e)   Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

f)   Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)   Such further relief as the court deems just and proper.

## Count 2 – Drivers Privacy Protection Act

129.   Plaintiff incorporates the foregoing paragraphs by reference.

130.   Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)     Punitive damages pursuant to 18 U.S.C. § 2724(b)(2);

c)     Reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 2724(b)(3);

d)     An injunction prohibiting defendants from further obtaining plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)     An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)     An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

### Count 3 – Michigan Regulation of Collection Practices Act

131.     Plaintiff incorporates the foregoing paragraphs by reference.

132.     Each defendant has violated the MRCPA. Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)     Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)     Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c)     Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment

of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

d) Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

e) Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f) Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to M.C.L. § 445.257(2);

b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

c) Statutory damages pursuant to M.C.L. § 445.257(2);

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e) Equitable relief pursuant to M.C.L. § 445.257(1).

## Count 4 – Michigan Occupational Code

133. Plaintiff incorporates the foregoing paragraphs by reference.

134. Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

31

c)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

d)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

e)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

f)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

g)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: May 23, 2018

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com